IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ANGELICA GONZALEZ, | |
| Plaintiff, | **8:25CV466** |
| vs. | |
| JAMES WORDEN, Judge; KATIE REICHERT, GAL; KIRK FELLHOELTER, County Attorney; AMANDA MATHIS, DHHS Caseworker; and SONYA OLIVERIUS, DHHS Supervisor; | **MEMORANDUM AND ORDER** |
| Defendants. | |

This matter is before the Court on Plaintiff Angelica Gonzalez's ("Gonzalez") Complaint, Filing No. 1, and several documents filed as amendments or supplements to the Complaint.  She has been given leave to proceed in forma pauperis.  Filing No. 9. The Court now conducts an initial review of Gonzalez's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

Also before the Court are Gonzalez's Motion for Temporary Restraining Order ("TRO"), Filing No. 10, and several motions related to the Motion for TRO, including the Motion for Expedited Consideration, Filing No. 11, and Motions construed as motions to supplement the Motion for TRO, *see* Filing No. 12 and Filing No. 13.  The other matters pending are several Motions the Court construes as motions to amend or supplement the Complaint:  Filing No. 14, Filing No. 15, Filing No. 16, Filing No. 17, Filing No. 18, and Filing No. 19.  Gonzalez's Motions and Complaint are addressed below.

### I.  SUMMARY OF COMPLAINT

### A.  Motions to Amend & The Operative Complaint

To summarize Gonzalez's allegations, the Court first attempts to identify which of the several pleadings filed is the operative complaint in this case.  Gonzalez filed several Motions that the Court construes as motions to amend her complaint.  Some of the Motions appear to be entirely new amended complaints, *see, e.g.*, Filing Nos. 17, 18, 19. Other Motions appear to include allegations that Gonzalez wishes to include as part of an amended complaint, *see, e.g.*, Filing Nos. 14, 15.  Only one of the Motions is styled as a motion to amend the complaint, *see* Filing No. 16.

These repeated filings make it difficult for the Court to discern and review Gonzalez's claims.  Nevertheless, to consider all of Gonzalez's claims on initial review, the Court will treat the original Complaint, Filing No. 1, as the operative pleading in this matter.  To the extent the other Motions related to Gonzalez's Complaint, Filing Nos. 14, 15, 16, 17, 18, and 19, are intended to be motions to amend, the Motions are denied. However, each of these filings, will be considered supplements to the original Complaint for purposes of initial review.

### B.  Summary of Complaint and Supplements

Gonzalez ostensibly brings this action under 42 U.S.C. § 1983.  Filing No. 1 at 1. Gonzalez is the mother of minor child NM.  *Id.* at 1. During the 2023-2024 school year, NM was ordered to truancy court despite his diagnosed mental health conditions, including ADHD and Oppositional Defiant Disorder.  *Id.*  Bluffs Middle School counted medically excused absences as unexcused truancy, even though those absences were

2

for necessary mental health appointments. *Id.* In so doing, Gonzalez claims the court[1] disregarded the protections for medically exempt students provided under Nebraska Law LB 1029. *Id.* On April 21, 2025, the court declared NM a ward of the State of Nebraska, though he remained in Gonzalez's care, and Gonzalez alleges that the court's and DHHS's actions enabled her ex-husband to pursue custody based on a "false presumption of unfitness." *Id.* at 2.

Gonzalez is also the mother of three additional minor children: BDM, BNM, and DM. Filing No. 19 at 1. Gonzalez is a United States Air Force Veteran with a service-connected disability, including trauma arising from military sexual assault. *Id.* at 2. She was the primary caregiver for all four children, having secured medical, dental, educational, and behavioral health services for them. *Id.* at 2-3.

In December 2024, Gonzalez voluntarily participated in an Alternative Response program through Nebraska Department of Health and Human Services ("DHHS") to obtain support for school-based and behavioral needs. *Id.* at 4. She did not participate because of any finding of abuse or neglect. *Id.* Prior DHHS contacts reported that Gonzalez was cooperative, proactive, and doing everything she could to support the children. *Id.*

On April 21, 2025, Gonzalez claims that the case—presumably NM's truancy case—was escalated due to truancy concerns, even as Gonzalez was actively working with schools to implement protective measures. *Id.* Gonzalez asserts that no "parenting deficiencies," safety concerns, or abuse allegations "were substantiated" against her. *Id.* Rather than provide services, DHHS sought to remove Gonzalez from the parental role

---

[1] It is unclear from the allegations whether Gonzalez is referencing the "truancy court" or some other court.

and transfer custody of the children to their father, Defendant Jason Robert McLamb. *Id.* In so doing, DHHS disregarded the children's consistent reports of fear of McLamb's physical aggression and emotional volatility. *Id.*

During a summer 2025 visitation with Defendant McLamb, NM sent a series of distressed text messages to Gonzalez expressing fear, suicidal ideation, and a desire to return home. *See Id.* at 4-5. Gonzalez immediately notified Defendant Amanda Mathis, a DHHS case worker. *Id.* at 5. Mathis did not initiate crisis intervention, safety planning, or mental health services, and instead directed McLamb to confiscate the children's phones. *Id.* Gonzalez alleges that the phone confiscation removed the children's protective lifeline and prevented disclosure of harm, as well as emotional and crisis support. *Id.* On or around August 19, 2025, NM texted Gonzalez that McLamb had physically struck NM and his sibling, BNM. *Id.* No forensic interview was ordered, no welfare check was conducted, and no safety plan was produced. *Id.* Gonzalez was advised only to "stay calm." *Id.*

Defendant Katie Reichert, acting as Guardian ad Litem ("GAL"), received notice of the children's abuse and suicidal ideation. *Id.* Gonzalez claims Reichert was a mandatory reporter, but did not file an abuse report. *Id.* Reichert attributed the children's disclosures to "coaching," despite the children having reported independently. *Id.* Defendant Sonia Olivares, a support and visitation worker, repeatedly failed to facilitate scheduled calls between Gonzalez and the children. *Id.* at 6. Gonzalez alleges visits were missed due to late arrivals, uncharged tablets, lack of service, and cancellations, leaving the children further isolated from Gonzalez. *Id.*

4

Defendant Dr. Gage Stermensky conducted a parental capacity evaluation that Gonzalez alleges was biased and tainted by collusion with Mathis. *Id.* at 6. Specifically, Gonzalez alleges that Mathis provided Dr. Stermensky with "narrative collateral" that he incorporated as clinical findings. *Id.* Dr. Stermensky also failed to perform standardized diagnostic testing. *Id.* He also characterized Gonzalez's trauma responses as personality defects and disregarded Gonzalez's military trauma and PTSD diagnosis. *Id.*

Gonzalez further alleges that Defendants violated the Indian Child Welfare Act ("ICWA"), 25 U.S.C. §§ 1901-1963, by ignoring the tribal enrollment eligibility of the children and failing to comply with ICWA's notice and placement requirements. Filing No. 14 at 1. Specifically, Gonzalez argues that Defendants ignored ICWA directives that prioritize reunification with family and kinship placement over non-relative or out-of-state placement. *Id.* On September 24, 2025, Gonzalez received an email from Defendant Lori Browning, DHHS counsel, that Gonzalez alleges explicitly limited her parental participation. *See Id.* Gonzalez also claims the email reflects a systemic practice of excluding her from decision-making regarding the children's medical, educational, and cultural needs. *Id.*

Gonzalez alleges that Browning engaged in retaliatory conduct during a Family Team Meeting on September 26, 2025. Filing No. 15 at 1. During the meeting, Browning dismissed Gonzalez's concerns and then acknowledged she had filed a required report only because Gonzalez had raised the issue with the Nebraska Ombudsman. *Id.* On September 29, 2025, Browning disclosed in open court, during Scotts Bluff County juvenile proceedings, that Gonzalez had filed a complaint against the presiding judge,

5

which Gonzalez alleges was retaliatory and intended to prejudice the judge against her. *Id.*

Gonzalez further alleges that Judge James Worden, sued in his individual capacity, denied Gonzalez's motion for Zoom-access counsel without lawful basis. Filing No. 17 at 3. Gonzalez alleges that Judge Worden endorsed a process that led to ex parte communications between DHHS, the County Attorney, and Defendant McLamb's attorney. *Id.* at 2-3. Gonzalez also alleges that the children experienced educational neglect under DHHS placement, including declining grades, missing assignments, failure to implement IEP accommodations, and absence of any scheduled therapy despite medical necessity. *Id.* at 3.

Gonzalez brings claims under 42 U.S.C. § 1983 for several constitutional violations. She specifically references due process and equal protection under the Fourteenth Amendment, including substantive due process (family integrity), procedural due process, and retaliation for protected conduct under the First Amendment. *See* Filing No. 1 at 2; Filing No. 19 at 6-7; Filing No. 17 at 3-4. Gonzalez additionally references Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, the Indian Child Welfare Act, and the Individuals with Disabilities Education Act, as well as a state-created danger claim. *See* Filing No. 19 at 6-7; Filing No. 17 at 3-4; Filing No. 14 at 2. Gonzalez requests a declaratory judgment that her constitutional rights were violated, injunctive relief against the misuse of truancy laws as applied to medically exempt children, emergency protective custody review, immediate return of the children to her care or to neutral placement, appointment of a new GAL, a neutral trauma-informed

6

evaluation, forensic interviews of the children, and an award of compensatory damages, attorney fees, and costs. Filing No. 1 at 2; Filing No. 19 at 7-8.

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within

the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

### III. DISCUSSION OF COMPLAINT

### A.  *Rooker-Feldman* Doctrine

Gonzalez's claims are subject to dismissal for lack of subject matter jurisdiction. Jurisdiction is a threshold issue for this court. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-96 (1998); *see Arbaugh v. Y & H Corp.,* 546 U.S. 500, 507 (2006) ("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action.").

One limit on the Court's subject matter jurisdiction is a legal principle known as the *Rooker-Feldman* doctrine, which provides that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments and state proceedings. *Mosby v. Ligon*, 418 F.3d 927, 931 (8th Cir. 2005); *see also D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923). The principle recognizes the contours of state and federal jurisdiction underlying our federalism system by prohibiting "lower federal courts from exercising jurisdiction over actions seeking review of, or relief from, state court judgments." *Webb as next friend of K. S. v. Smith*, 936 F.3d 808, 816 (8th Cir. 2019). Put another way, a party who loses in state court "is barred from seeking what in substance would be appellate review of the state judgment in a United States district

court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994). The *Rooker-Feldman* doctrine generally applies where a case is brought by a loser in a state court action, complaining of injuries caused by the state court's judgment rendered before the district court proceedings commenced, and inviting the district court to review and reject that judgment. *See Exxon Mobile Corp. v. Saudia Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

This is primarily what Gonzalez appears to seek in this case. At their core, Gonzalez's claims appear to arise out of and seek relief from state court proceedings. Gonzalez specifically challenges the juvenile court proceedings in Scotts Bluff County, Nebraska, in which the court declared NM a ward of the State and transferred custody of the children to their father. *See* Filing No. 1 at 2 (summarizing "truancy court's" errors and seeking relief under the Fourteenth Amendment). Moreover, though the other supplements lack clarity, they each challenge a Defendant's action as contributing to an erroneous custody placement by a state court. *See, e.g.*, Filing No. 14 at 1 (challenging court's placement of Gonzalez's children as a violation of the ICWA); Filing No. 15 at 1 (arguing that Defendant Browning's retaliatory statements led to bias during Scotts Bluff County juvenile proceedings); Filing No. 17 at 4 (seeking "correction of violations" of Gonzalez's Due Process rights during state court proceedings); Filing No. 18 (alleging various errors in state court child custody proceedings); Filing No. 19 at 7 (asserting that the "case was escalated without evidence" and challenging placement of Gonzalez's children).

In sum, the injuries Gonzalez consistently alleges—improper removal of her children, transfer of custody to their father, restrictions on her parental communication and decision-making authority, NM's ward-of-the-state determination—all flow directly from the Scotts Bluff County juvenile court's orders.  The relief she consistently requests underscores this conclusion.  In several of her filings, she seeks emergency return of the children, restoration of her parental rights, and declarations that the proceedings were unconstitutional.  Each of these forms of relief would require this Court to review and effectively reverse state court judgments.  The *Rooker-Feldman* doctrine bars such review.  *See Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002) ("[N]o matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment.") (citation and internal quotations omitted).

The constitutional labels Gonzalez attaches to her claims do not alter this conclusion. *See Mosby v. Ligon*, 418 F.3d 927, 932 (8th Cir. 2005).  In various ways and with vastly different levels of detail, Gonzalez's claims reference rights including due process, equal protection, and First Amendment retaliation.  *See, e.g.,* Filing No. 1 at 2; Filing No. 15 at 1; Filing No. 19 at 3.  As relief for these violations, she primarily seeks an injunction correcting the erroneous actions taken.  *See, e.g.*, Filing No. 1 at 2; Filing No. 14 at 2; Filing No. 17 at 4; Filing No. 19 at 3.  The only practical reason for such relief would be to overturn the state court decisions against her.  In other words, the Court "is in essence being called upon to review a state court decision." *Feldman*, 460 U.S. at 482 n. 16.  Accordingly, to the extent Gonzalez claims injury arising out of orders entered in a

state court case and seeks relief from those orders, such claims are barred by *Rooker-Feldman* and must be dismissed.

## B.  Domestic Relations Doctrine

In addition to the *Rooker-Feldman* doctrine, the domestic relations exception to federal jurisdiction independently bars the Court from exercising subject matter jurisdiction over Gonzalez's claims.  *Kahn v. Kahn*, 21 F.3d 859, 861 (8th Cir. 1994).  In matters of family law, the domestic relations exception divests federal courts of jurisdiction over a narrow range of cases implicating domestic relations issues, such as divorce, allowance of alimony, child custody, and child support.  *See Wallace v. Wallace*, 736 F.3d 764, 766 (8th Cir. 2013).  Even "when a cause of action closely relates to but does not precisely fit into the contours of an action for divorce, alimony or child custody, federal courts generally will abstain from exercising jurisdiction."  *Kahn*, 21 F.3d at 861.  This doctrine precludes federal suit involving "a remedy which is essentially domestic—where, in addressing the same conduct involved in a state domestic proceeding, the effect of a remedy in the federal suit is to modify, nullify, or predetermine the domestic ruling of the state proceeding."  *Wallace*, 736 F.3d at 767.  No matter how styled, the domestic relations exception disallows domestic claims "cloaked in the 'trappings' of another type of [federal] claim."  *Mandel v. Town of Orleans*, 326 F.3d 267, 271 (1st Cir. 2003) (quoting *Congleton v. Holy Cross Child Placement Agency, Inc.*, 919 F.2d 1077, 1078-79 (5th Cir. 1990)).

Gonzalez's primary claims fall within the domestic relations exception.  At their core, her claims seek to modify or nullify state juvenile court determinations regarding child custody and placement.  As noted above, the constitutional and statutory claims she

11

raises, however labeled, are directed at conduct that is inseparable from the state court's exercise of jurisdiction over the children. Further, the relief she seeks would effectively predetermine or overturn family law rulings in state court. Thus, these claims are barred by the domestic relations doctrine.

## C. Sovereign Immunity

To the extent Gonzalez's claims are brought against the State of Nebraska or DHHS,[2] those claims are barred by the Eleventh Amendment. The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and employees of a state sued in their official capacities. *See Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). The State of Nebraska has not waived its sovereign immunity, and Congress has not overridden it with respect to the claims alleged here. DHHS is a state instrumentality. *See Pointer v. Lincoln Reg'l Ctr.*, No. 8:08CV80, 2008 WL 2773859, at *2 (D. Neb. July 14, 2008).

Moreover, a suit may be brought under § 1983 only against a "person" who acted under color of state law. A state is not a "person" as that term is used in § 1983 and is not suable under the statute. *Hilton v. South Carolina Pub. Railways Comm'n*, 502 U.S. 197, 200-01 (1991). Thus, § 1983 does not create a cause of action against DHHS. To the extent Gonzalez's asserts claims against the DHHS, they must be dismissed.

## D. Judicial Immunity

To the extent Gonzalez seeks damages from Defendant Judge James Worden based on actions he took in the state juvenile proceedings, those claims are barred by

---

[2] Gonzalez does not name DHHS as a defendant, but makes allegations against DHHS in several of her supplemental materials.

absolute judicial immunity.  A judge is immune from suit, including suits brought under §

1983, in all but two narrow sets of circumstances:  where the challenged conduct was not

taken in the judge's judicial capacity, or where the conduct, though judicial in nature, was

taken in the complete absence of all jurisdiction.  *Schottel v. Young*, 687 F.3d 370, 373

(8th Cir. 2012).  An act is judicial if "it is one normally performed by a judge and if the

complaining party is dealing with the judge in his judicial capacity."  *Id*. (internal citations

omitted).  Gonzalez's allegations against Judge Worden plainly describe judicial acts for

which he is absolutely immune.  While Gonzalez alleges that Judge Worden acted without

jurisdiction or in a biased manner, the Court has carefully reviewed those allegations and

finds they are not supported by the law or facts alleged.  Gonzalez's claims against Judge

Worden for damages must therefore be dismissed.

### E. Claims Against Individual Defendants

Even setting aside the jurisdictional bars described above, the remaining

defendants are likely immune from Gonzalez's claims.  *See Thomason v. SCAN

Volunteer Servs., Inc.*, 85 F.3d 1365, 1373 (8th Cir. 1996) (concluding social workers

were "absolutely immune from liability for their participation in the ex parte proceedings

in state court that led to the award of temporary protective custody of [the child] to the

state").  Reichert, who served as GAL, and Dr. Stermensky, who conducted the parental

capacity evaluation, both performed functions that courts have recognized as quasi-

prosecutorial in nature.  *See id.*

Additionally, for Mathis and the other DHHS caseworkers, Gonzalez's allegations

do not plausibly allege a constitutional violation independent of the state court

proceedings.  *See Lopez v. Kelly*, No. 8:16CV98, 2016 WL 3172749, at *2 (D. Neb. June

13

6, 2016) (dismissing complaint alleging CPS caseworker prepared false affidavit); *Thomason*, 85 F.3d at 1373 (absolute witness immunity applied to arguably false statements made by caseworker in affidavit in state court proceedings). In sum, Gonzalez alleges that they prepared or relied upon biased reports, restricted her communication with the children, and created unsafe conditions after custody transfers. To the extent those claims are cognizable, they are inextricably intertwined with the state court proceedings and thus fall within the *Rooker-Feldman* doctrine.

## F. Other Claims

The Court has carefully reviewed Gonzalez's other claims, keeping in mind that complaints filed by pro se litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). "Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984). Additionally, "[t]hough pro se complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (internal citations omitted); *see also Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) ("[W]e will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded"); *Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir. 1981) ("[P]ro se litigants must set [a claim] forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law."). A complaint must state enough to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

14

The Complaint and other supplemental materials—even construed liberally—do not comply with the general rules of pleading. In assessing whether a complaint contains sufficient facts, the Court may disregard legal conclusions that are stated as factual allegations. *See Iqbal*, 556 U.S. at 678. Further, even though pro se complaints are construed liberally, they still must allege sufficient facts to support the claims asserted. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). For many of Gonzalez's piecemeal claims, she makes only a passing reference to a statute or constitutional provision without making any factual allegations, *see, e.g.*, Filing No. 17 at 3-4; Filing No. 18 at 3. For others, her claims are largely supported only by legal conclusions, *see, e.g.,* Filing No. 19 at 6-8.

Other claims provide some factual support, but not enough to give notice of the claim. For example, in some of the versions of Gonzalez's complaint, she claims that Defendants violated the ICWA. *See, e.g.*, Filing No. 14 at 1. The ICWA permits an "Indian[3] custodian" who is deprived of custody of an "Indian child" through termination of parental rights under state law to "petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title." 25 U.S.C. § 1914. Some circuits courts have concluded the language of § 1914 grants federal courts authority to invalidate a state-court order for termination of parental rights or foster care placement if the order violates of § 1911, 1912 or 1913. *See, e.g., Doe v. Mann*, 415 F.3d 1038, 1044-48 (9th Cir. 2005). Even if the Court could invalidate a state-court order under § 1914, from the face of Gonzalez's many

---

[3] "Indian child" and "Indian custodian" are terms in 25 U.S.C. § 1914 itself. The Court uses these terms in this Memorandum and Order because federal law commonly and pervasively refers to those descended from or affiliated with recognized American Indian tribes as "Indians." *See Bear v. Wickre*, No. 5:24-CV-05065-RAL, 2025 WL 868955, at *5 (D.S.D. Mar. 20, 2025).

15

claims, the Court cannot discern, among other things, whether Gonzalez or her children meet these requirements. Nor does Gonzalez allege sufficient facts to support a violation of the other provisions of the ICWA. Because Gonzalez does not allege sufficient facts to support the claims asserted or to give notice of the claims, she fails to state a claim.

Additionally, because Gonzalez's Complaint and supplemental materials fail to state a claim upon which relief may be granted under 42 U.S.C. § 1983 or any other federal law, the Court need not discuss whether a plausible claim for relief is stated under Nebraska law. Without a viable federal question to decide, the Court will not exercise its supplemental jurisdiction in this case. *See* 28 U.S.C. § 1367 (c)(3) (providing that when a district court has disposed of all federal claims that conferred original jurisdiction under 28 U.S.C. § 1331, it may decline to exercise supplemental jurisdiction over remaining state law claims). Usually, the dismissal of the federal claims "will point toward declining to exercise jurisdiction over the remaining state-law claims," *Wilson v. Miller*, 821 F.3d 963, 971 (8th Cir. 2016) (quotation omitted), and the Court finds no reason to make an exception here.

### IV.  MOTION FOR TEMPORARY RESTRAINING ORDER

Because Gonzalez's claims are barred under the *Rooker-Feldman* doctrine, this Court lacks jurisdiction and her Motion for Temporary Restraining Order ("TRO"), Filing No. 10, and each of the associated motions to supplement, Filing Nos. 11, 12, and 13[4] are moot and must be dismissed. *See Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 523 (10th Cir. 2023) (*citing D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228

---

[4] The Court construes the Motions at Filing Nos. 11, 12, and 13 to be motions to supplement the original Motion for TRO. These Motions will be denied, but the Court has reviewed the filings in considering Gonzalez's Motion for TRO.

(10th Cir. 2004)); *see also Renfroe v. Burlington Cap. Props*., L.L.C., No. 8:25CV707, 2025 WL 3640962, at *2 (D. Neb. Dec. 16, 2025).   Further, even if the Court were to consider the Motion, Gonzalez has not shown that a TRO is proper.   The standards set forth by *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981), apply to Gonzalez's motion.   In *Dataphase*, the Eighth Circuit Court of Appeals, clarified the factors district courts should consider when determining whether to grant a motion for preliminary injunctive relief: (1) the threat of irreparable harm to the movant; (2) the balance between that harm and the injury that granting the injunction will inflict on the other interested parties; (3) the probability the movant will succeed on the merits; and (4) whether the injunction is in the public interest.   *Id.* at 114.

Failure to show irreparable harm alone is a sufficient basis for a court to deny injunctive relief.   *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 420 (8th Cir. 1987).   While "a court must consider all of the factors to determine whether the balance weighs toward granting the injunctive relief," the likelihood of success on the merits is the most significant factor.   *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013).   "To that end, the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied."   *Id*.   The Court has carefully reviewed the record and, for the reasons stated, Gonzalez has not shown a probability of success on the merits.   Accordingly, while the Court is sympathetic to Gonzalez, her TRO must be denied.

## VI.  CONCLUSION

In its present form, Gonzalez's Complaint fails to state a claim upon which relief can be granted, and her claims are likely barred by the *Rooker-Feldman* doctrine. Nevertheless, out of an abundance of caution, if Gonzalez wishes to proceed on valid

17

claims under § 1983 or any other federal law, Gonzalez shall have 30 days from the date of this Memorandum and Order to file an amended complaint that sufficiently states her federal claims. The amended complaint must specify the capacity in which the Defendants and any additional defendants are sued and must set forth all of Gonzalez's claims (and any supporting factual allegations). To be clear, if Gonzalez chooses to file an amended complaint, she must restate the relevant allegations she wishes to pursue, and any new allegations. Gonzalez should be mindful to explain the relief she is seeking and to state the constitutional and jurisdictional basis for her claim. Gonzalez should also be mindful that any claims that arise out of and seek relief from state court proceedings will be barred. Gonzalez is warned that any amended complaint she files will supersede, not supplement, her prior pleadings and supplements.

If Gonzalez chooses to file an amended complaint, she is advised that the Court will no longer permit the piecemeal filing of supplemental materials in this case. Gonzalez's repeated filing of supplementary materials and motions frustrated the Court's ability to discern and review the claims Gonzalez seeks to raise in this matter. As noted above, it is true that complaints filed by pro se litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers; however, even pro se litigants must comply with the Federal Rules of Civil Procedure. As already noted, Federal Rule of Civil Procedure 8 requires that every complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "[e]ach allegation . . . be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1).

Accordingly, if Gonzalez decides to file an amended complaint, she must include all of the claims she wishes to pursue against all of the defendants she wishes to proceed

against in <u>one document</u>.  To that end, Gonzalez is encouraged to use the enclosed court-approved form to draft her amended complaint, which the Clerk of the Court will provide. The amended complaint must identify each defendant by name, must specify in what capacity each defendant is sued, and must set forth all of Gonzalez's claims and any supporting factual allegations against that defendant. Gonzalez should be mindful to explain what each defendant did to her, when the defendant did it, how the defendant's actions harmed her, and what specific legal right Gonzalez believes the defendant violated.

If Gonzalez fails to file an amended complaint in accordance with this Memorandum and Order, this action will be dismissed without prejudice and without further notice.  The Court reserves the right to conduct further review of Gonzalez's claims pursuant to 28 U.S.C. § 1915(e) after she addresses the matters set forth in this Memorandum and Order.

IT IS THEREFORE ORDERED:

1.      Gonzalez's Motions which the Court construes as motions to amend or supplement the Complaint, Filing No. 14, Filing No. 15, Filing No. 16, Filing No. 17, Filing No. 18, and Filing No. 19, are denied, though the Court has considered these documents as supplements to the original Complaint, Filing No. 1.

2.      Gonzalez shall have 30 days to file an amended complaint in accordance with this Memorandum and Order.  Failure to file an amended complaint within the time specified by the Court will result in the Court dismissing this case without further notice to Gonzalez.  In her amended complaint, Gonzalez must state the capacity (official, individual, or both) in which each Defendant is sued and set forth all of Gonzalez's claims

(and any supporting factual allegations) against each Defendant.  Gonzalez should be mindful to explain in her amended complaint what each Defendant did to her, when each Defendant did it, and how each Defendant's actions harmed her.  Gonzalez should also be mindful to explain the relief she is seeking and to state the constitutional and jurisdictional basis for her claims.

3.    In the event Gonzalez files an amended complaint, Gonzalez shall restate the allegations of the Complaint, Filing No. 1, she wishes to pursue, and any new allegations.  Failure to consolidate all claims into one document may result in the abandonment of claims.  Gonzalez is warned that an amended complaint will supersede, not supplement, her prior pleadings.

4.    The Court reserves the right to conduct further review of Gonzalez's claims pursuant to 28 U.S.C. §§ 1915(e) in the event she files an amended complaint.

5.    The Clerk of the Court is directed to set a pro se case management deadline using the following text: **April 27, 2026** —amended complaint due.

6.    The Clerk of Court is direct to send to Plaintiff the Form Pro Se 15, Complaint for Violation of Civil Rights (Non-Prisoner).

7.    Gonzalez's Motion for Temporary Restraining Order, Filing No. 10, is denied.

8.    Gonzalez's Motions, Filing Nos. 11, 12, and 13, which the Court construes as supplements to the Motion for TRO, are denied.

20

Dated this 26th day of March, 2026.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge